**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*pro hac vice app. forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

Stefan Bogdanovich (*pro hac vice app. forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

**KEMP JONES, LLP**
Michael Gayan, Esq. (Nev. Bar #11135)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
m.gayan@kempjones.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| MARS CARBONELL, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br>     v.<br><br> SEATGEEK, INC.<br><br>                              Defendant. | Case No.: 2:24-cv-02087<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Mars Carbonell ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## <u>NATURE OF THE ACTION</u>

1. This is a class action suit brought against Defendant SeatGeek Inc. ("SeatGeek") for ambushing consumers purchasing tickets to entertainment events with hidden junk fees.  To get consumers to shop on its platform, SeatGeek advertises fee-less ticket prices, strings consumers along several checkout screens, and continues to represent that artificially low price as consumers input their credit card information, billing information, and ticket delivery information.  Then, on the very final confirmation screen, in tiny grey font on the right corner of the screen, far away from the "Place Order" button, SeatGeek sneaks in an eye-popping 35 percent fee.  Because SeatGeek repeatedly represents a fee-less ticket price throughout the entire purchase process, a consumer has no reason to be on the lookout for a tiny grey font fee that is hidden in plain sight on the final confirmation page, *after* the consumer has already input her credit card, billing, and delivery information.

2. In the context of a Vegas magic show, such a sleight-of-hand would likely get met with applause.  But in the context of an online transaction, it tricks consumers into paying fees they never noticed and never agreed to, in violation of various Nevada Deceptive Trade Practices Act provisions.

3. In particular, SeatGeek's drip pricing model violates Nevada's newly enacted Ticket Reseller provision, Nevada Revised Statutes, § 598.397 *et seq.* The law provides that "A reseller, a secondary ticket exchange or any affiliate of a reseller or secondary ticket exchange shall not resell a ticket, in person or remotely, <u>without first disclosing</u> to the purchaser the total amount that the purchaser will be charged for the ticket, including any <u>fees</u> which represent a portion of the total amount to be charged."  Nev. Rev. Stat. Ann. § 598.39795 (emphasis added).  Here, however, SeatGeek did not <u>first disclos[e]</u>… the total amount… including… fees."  Instead, in various bright colors, SeatGeek first disclosed a fee-less price, and only thereafter snuck in a fee at the end of the transaction.

4. SeatGeek's drip pricing[1] model is also a "deceptive trade practice." The law provides "[a] person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she … (11) Advertises … [ticket selling] services as being available free of charge with intent to require payment of undisclosed costs as a condition of receiving the goods [*i.e.* tickets] or [the ticket selling] services," or "(13) Makes false or misleading statements of fact concerning the price of goods or services for sale or lease," or "(14) Fraudulently alters … written statement of charges or other document in connection with the sale or lease of goods or services." Nev. Rev. Stat. Ann. § 598.0915.

5. For these reasons, Plaintiffs seek relief in this action individually, and on behalf of all other ticket purchasers for all places of entertainment in the state of Nevada that used SeatGeek's website or mobile phone application, for actual and/or statutory damages, reasonable attorneys' costs and fees, and injunctive relief under Nev. Rev. Stat. Ann. §§ 598.3982.

## **JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant. Nev. Rev. Stat. Ann. § 598.3982(2)(b)-(d) provide for $1,000 in statutory damages for a Defendant's first violation, $2,500 for its second violation, and $5,000 in statutory damages for each subsequent violations.  There are tens of thousands of members of the class, and so the amount in controversy figure is readily met.

7. This Court has personal jurisdiction over Defendant because Defendant operates a platform to purchase tickets to various places of entertainment in the state of Nevada, sells tickets to Nevadan residents, and collects exorbitant junk fees for its basic internet services.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

---

[1] Will Kenton, *Drip Pricing: What it Means, How it Works*, Investopedia, (Jan. 24, 2023), https://www.investopedia.com/terms/d/drip-pricing.asp

**PARTIES**

9.    Plaintiff Mars Carbonell is an individual consumer who, at all times material hereto, was a citizen and resident of Las Vegas, Nevada. Plaintiff purchased an admission ticket to a Maluma concert at the MGM Grand Garden Arena in Las Vegas on September 13, 2023 through SeatGeek, and saw a purchase flow substantially similar to the one shown in Figures 1-15.

10.    Defendant, SeatGeek, Inc., is a Delaware corporation with its principal place of business in New York, NY. SeatGeek owns and operates the website http://www.seatgeek.com and the SeatGeek smartphone app.

**FACTUAL BACKGROUND**

**A.    Drip Pricing**

11.    SeatGeek is one of many online ticket exchange platforms—like Ticketmaster, Eventbrite, or TickPick—that offers consumers the ability to purchase tickets to entertainment events online, via its website or its smartphone app.

12.    "Drip pricing" is a type of bait-and-switch pricing method that refers to "the practice of advertising only part of a product's price upfront and revealing additional charges later as consumers go through the buying process.[2]

13.    Behavioral economists largely agree that drip pricing causes consumers to overpay, by exploiting people's drive to complete a commenced purchase.[3] By luring people into a transaction with an artificially low price, a website designer can create a sense of commitment from the consumer to the transaction. By making the consumer click through several screens, the website designer forces the consumer to invest time into the transaction. After a seller has introduced surprise fees on the final screen, assuming the consumer even notices the fees, the consumer will still be reticent to leave due to a sense they will incur a loss by abandoning the transaction.

14.    The FTC has sought to regulate undisclosed junk fees, particularly in the live event ticket industry. In 2023, the FTC proposed a rule that would regulate drip pricing and other similar

---

[2] Mary W. Sullivan, Fed. Trade Comm'n, Econ. Analysis of Hotel Resort Fees (2017), https://www.ftc.gov/reports/economic-analysis-hotel-resort-fees.

[3] Steffen Huck & Brian Wallace, The impact of price frames on consumer decision making: Experimental evidence, at 1-3 (Oct. 15, 2015).

impositions of unfair and deceptive fees and conduct.[4] The proposed rule is still under consideration.

15.    As part of the process, the FTC invited public comment on its proposed rule. One such commentator was TickPick, LLC.  Like SeatGeek, TickPick is a seller of event tickets. However, unlike SeatGeek, TickPick does not engage in the deceptive practices alleged herein. According to TickPick, "[t]he first price you see for a ticket on TickPick is the price charged for that ticket[,]" which does not include "hidden fees, ever."[5]

16.    At the same time, several states, like California and New York, have passed high-profile laws banning surprise junk fees.  For example, in August 29, 2022, New York amended its laws to require: "Every … platform that facilitates the sale or resale of tickets shall disclose the total cost of the ticket, inclusive of all ancillary fees that must be paid in order to purchase the ticket, and disclose in a clear and conspicuous manner the portion of the ticket price stated in dollars that represents a service charge … prior to the ticket being selected for purchase." N.Y. Arts & Cult. Aff. Law § 25.07(4) (emphasis added). Similarly, on July 1, 2024, California amended its laws to clarify that "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" was an "unlawful" "unfair or deceptive act or practice." Cal. Civ. Code § 1770(a)(29).

**B.    SeatGeek's Website**

17.    SeatGeek appeared to get the memos circulated from the New York and California regulators about these junk fee laws,[6] because when consumers go on SeatGeek's website to purchase tickets to events in New York or California, SeatGeek has no problem disclosing them the

---

[4] Trade Regulation on Unfair or Deceptive Fees, 88 Fed. Reg. 77,420 (proposed Nov. 9, 2023) (to be codified at 16 C.F.R. pt. 464).

[5] TickPick LLC, *Comment Letter on Proposed Rule on Unfair or Deceptive Fees* (Nov. 9, 2023), https://www.regulations.gov/comment/FTC-2022-0069-6078.

[6] Request For Additional Guidance—New York State Senate Bill S. 94661, New York Department of Licensing Services, https://dos.ny.gov/system/files/documents/2023/06/response-letter-redacted.pdf; SB 478 Frequently Asked Questions, California Office of the Attorney General, https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

"the total cost of the ticket, inclusive of all ancillary fees" on the <u>first</u> ticket selection screen, prior to checkout. *See e.g.*, *below*, tickets to home San Jose Sharks or New York Rangers games.



**Figure 1**

**Figure 2**

18.     However, when a consumer seeks to purchase tickets to a Las Vegas Golden Knights hockey game in Las Vegas, Nevada, SeatGeek fails to first disclose the total cost of the ticket, inclusive of all ancillary fees. Instead, SeatGeek "first discloses" a fee-less price.



**Figure 3**

19.     Much like California and New York, Nevada also prohibits this behavior.  On July 1, 2019, amid much less fan-fare than the New York or California laws, Nevada amended its Deceptive Trade Practices Act to add the following provision:

> A reseller, a secondary ticket exchange or any affiliate of a reseller or secondary ticket exchange shall not resell a ticket, in person or remotely, <u>without first disclosing</u> to the purchaser the total amount that the purchaser will be charged for the ticket, including any fees which represent a portion of the total amount to be charged.

Nev. Rev. Stat. § 598.39795.

20.     The Nevada law further provides that on this same screen:

[A] reseller, a secondary ticket exchange or any affiliate of a reseller or secondary ticket exchange shall not … Resell a ticket <u>without first informing</u> the purchaser of the location in the entertainment facility of the seat or, if there is no assigned seat, the general admission area to which the ticket corresponds, including, without limitation, the row and section number of the ticket.

Nev. Rev. Stat. § 598.3979.

21.     By failing to "first disclos[e] to the purchaser the total amount that the purchaser will be charged for the ticket, including any fees" on this ticket selection screen, SeatGeek violated Nev. Rev. Stat. § 598.39795.  SeatGeek then compounded its deception by continuing to misrepresent a fee-less price for tickets through the Checkout process.

22.     After a consumer clicks the Black "Go to checkout" button on Figure 3, the consumer is taken to another page that begins the checkout process and asks the consumer for her email address where he or she wishes the have the tickets delivered to.  Figure 4, below.  This page also asks for the consumer's phone number.  On the right-hand side of the page is a bar showing a colorful image of the seat view, <u>the cost of the ticket excluding fees</u>, and various other information about the tickets, all in either black or grey text. Figure 5, next page.



**Figure 4**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**New York Rangers at Vegas Golden Knights**

Sat Jan 11, 2025 at 7:00pm

T-Mobile Arena, Las Vegas, NV

Tickets                                      $241.00 x 2

Promo code

---

🎟 **Section 2, Row M**

✂ **Mobile tickets**
Tickets will be transferred outside of SeatGeek to your contact email.

🕐 **In hand date**
Tickets delivered by January 10, 2025

📄 **Notes from the seller**
Flash

🛡 **Buyer Guarantee protected**
Every ticket is protected. If your event gets cancelled, we'll make it right.

**Figure 5**

23.     After a consumer inputs his or her information and clicks the "Continue to billing" button on Figure 4, the screen darkens and a pop-up appears asking her to confirm her email.



**Figure 6**

24.     If the consumer clicks the "Confirm" button, he or she is taken to a billing information page, which asks for the consumer's credit card number and other payment details, including the consumer's name and address. *See* Figure 7, below. The right-hand side of the page shows a bar identical to the one shown on the prior screen. There is again a colorful image of the seat view, and various other information about the tickets, all in either black or grey text. Figure 8, next page.



**Figure 7**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**New York Rangers at Vegas Golden Knights**

Sat Jan 11, 2025 at 7:00pm

T-Mobile Arena, Las Vegas, NV

Tickets                                    $241.00 x 2

Promo code

🎟 **Section 2, Row M**

⤢ **Mobile tickets**
Tickets will be transferred outside of SeatGeek to your contact email.

🕐 **In hand date**
Tickets delivered by January 10, 2025

📋 **Notes from the seller**
Flash

🛡 **Buyer Guarantee protected**
Every ticket is protected. If your event gets cancelled, we'll make it right.

**Figure 8**

1    25.    Again, <u>the cost of the ticket excluding fees</u> is shown on this right-hand side bar,

2  which looks identical to the right-hand side bar on the prior screen. *Compare* Figures 5 and 8.

3    26.    If the consumer completes inputting all the required information on the billing

4  information page and clicks the "Continue to review" button, she is taken to the final "Confirm and

5  pay" page.  *See* Figure 9, below.  The top of the page asks consumers to confirm the information

6  below, including the contact email where the tickets will be transferred and the credit card number

7  used to purchase the tickets.   At the bottom of this screen is a green Place order button which

8  includes a checkmark icon.



**Figure 9**

20    27.    The right-hand side bar on this final screen looks nearly identical to the bar shown

21  on all the prior screens.  It displays the colorful image of the seat view, the name of the event, the

22  date, the time, the ticket section and row, information about the mobile tickets, in hand date, a note

23  from the seller, and SeatGeek's Buyer Guarantee.  Again, all the text is in black or grey font.  A

24  reasonable consumer viewing this page would thus assume the screen contains the same

25  information as before. A side-by-side comparison of the two screens is reproduced below, on the

26  next page.



**Figure 10**

28.     But the right-hand side bar on this final page is **<u>not</u>** the same as it appears on all the final screens.  Instead, for the first and only time throughout this entire purchase process, SeatGeek sneaks in its eye-popping fees, **<u>which represent over 30% of the ticket's cost</u>**—totaling $159.44 in the example below alone. This fee is not bolded, not underlined, not italicized, and in same grey font that is indistinguishable from the surrounding text on the screen. *See* Figure 11.



**Figure 11**

29.    This sleight-of-hand is highly misleading and likely to trick reasonable consumers into paying more for tickets than they believed they would be. Reasonable consumers have no reason to be on the lookout for altered terms of purchase on confirmation screen after they had been presented with one price and were continually presented with that same price on nearly identical side-bars for multiple screens, as they submitted their personal, billing, and credit card information.

**C.    SeatGeek's Mobile Application**

30.    SeatGeek's mobile application contains a checkout flow very similar, and even more deceptive, than the checkout flow on its website, because it *never affirmatively* discloses its fees. Figures 12-14 show the checkout flow on the mobile app. Figure 12-13 are the same page, with Figure 13, showing more of the page if a user scrolls down on her smartphone. If a consumer clicks "Continue" on either Figures 12-13, the "Checkout" pop-up in Figure 14 appears.



**Figure 12**                    **Figure 13**                    **Figure 14**

31.     A consumer can click the "Buy with Apple Pay" button without ever noticing the fees SeatGeek charges. The fees only appear if the "^" icon next to the "View Details" text.



**Figure 15**

**D.      Plaintiff's Experience**

32.     Plaintiff Mars Carbonell purchased tickets for an admission ticket to a Maluma concert at the MGM Grand Garden Arena on September 13, 2023 in Las Vegas, Nevada using SeatGeek's website and the checkout flow he viewed was substantively the same as the one depicted in this Complaint.  Plaintiff was forced to pay SeatGeek's unlawfully applied fees, even though they were never clearly and conspicuously disclosed to him.

33.     Plaintiff was harmed by paying this fee under false pretenses. At the time he purchased his tickets, he does not recall even being aware fees were charged. Plaintiff and his pocketbook were also harmed by paying this unlawfully applied fee.

34.     Plaintiff was also harmed by not having the total cost of his tickets disclosed upfront at the start of the purchase process.  By not knowing the total cost of his tickets before Plaintiff selected his tickets for purchase from Defendant, Plaintiffs could not shop around for tickets from

other ticket sellers like EventBrite, or TickPick, just to name a few.  As such, Plaintiff had no way of knowing whether he was getting the best deal his money could buy.  By hiding its fees, Defendant was able to reduce price competition and cause harm to consumers like Plaintiff.

35.    At the time Plaintiff purchased his tickets, he was not aware that Defendant's conduct was unlawful.  He was not browsing websites in search of legal violations.  Instead, he was browsing Defendant's website because he sincerely intended to purchase event tickets, and he did, in fact, purchase those tickets.

36.    Because SeatGeek failed to "first disclose" its fees to Plaintiff, it also harmed Plaintiff by cause him to waste his time clicking through several screens.  Plaintiff is busy and his time is worth money.

## **CLASS ALLEGATIONS**

37.    **Nationwide Class Definition**: Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States who purchased tickets to an event in Nevada using SeatGeek's website or mobile application from November 7, 2020 to the present.

38.    **Nevada Subclass Definition**: Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the state of Nevada who purchased tickets to an event in Nevada using SeatGeek's website or mobile application from November 7, 2020 to the present.

39.    Members of the Nationwide Class and Nevada Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Nationwide Class and Nevada Subclass number in the hundreds of thousands.  The precise number of Nationwide Class and Nevada Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Nationwide Class and Nevada Subclass members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

40.    Common questions of law and fact exist as to all Nationwide Class and Nevada Subclass members and predominate over questions affecting only individual Nationwide Class and Nevada Subclass members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant failed to first disclose the total amount, including all ancillary fees, it would be

charging class members before reselling the tickets in violation of Nevada Revised Statutes § 598.39795; (b) whether Defendant falsely advertised its ticket selling services as being available free of charge in violation of Nevada Revised Statutes § 598.0915(11); (c) whether Defendant made false and misleading statements of fact concerning the price of its tickets and ticketing selling services in violation of Nevada Revised Statutes § 598.0915(13); and (d) whether Defendant fraudulently altered its written statement of charges in connection with its sale of tickets in violation of Nevada Revised Statutes § 598.0915(14).

41.    The claims of the named Plaintiff are typical of the claims of the Nationwide Class and Nevada Subclass in that the named Plaintiff and the Nationwide Class and Nevada Subclass sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant failing to first disclose the total amount of its tickets, including Defendant's fees, throughout the online ticket purchase process.

42.    Plaintiff is an adequate representative of the Nationwide Class and Nevada Subclass because his interests do not conflict with the interests of the Nationwide Class and Nevada Subclass members they seek to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Nationwide Class and Nevada Subclass members will be fairly and adequately protected by Plaintiff and his counsel.

43.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Nationwide Class and Nevada Subclass members.  Each individual Nationwide Class and Nevada Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents the potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a

single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**CAUSES OF ACTION**
**COUNT I**
**Nevada Revised Statutes § 598.39795**
**(On Behalf Of The Nationwide Class and Nevada Subclass)**

44. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

45. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

46. SeatGeek is "a reseller" or "secondary ticket exchange" because owns, operates, or controls the SeatGeek website and smartphone application, which allows users to buy and sell tickets to various events in Nevada.

47. SeatGeek resold tickets to Plaintiff and Class members.

48. SeatGeek violated Nevada Revised Statutes § 598.39795 by reselling tickets to Plaintiff and Class members "without <u>first disclosing</u> to the purchaser the total amount that the purchaser will be charged for the ticket, including any fees which represent a portion of the total amount to be charged," as depicted in Figures 3 and 12 of this complaint.

49. On behalf of themselves and members of the Nationwide Class and Nevada Subclass, Plaintiffs seek to recover statutory damages from $1,000 to $5,000 per violation. *See* Nev. Rev. Stat. Ann. § 598.0915.

**COUNT II**
**Nevada Revised Statutes § 598.0915**
**(On Behalf Of The Nationwide Class and Nevada Subclass)**

50. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

51. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

52. SeatGeek committed several deceptive trade practices in violation of the NDTPA. First, SeatGeek advertised its ticket selling services as being available free of charge with the intent

to require payment of undisclosed costs as a condition of receiving the tickets and ticket selling services, as depicted in Figures 3 through 8 and 12 through 14 of this Complaint.  Second, SeatGeek made false or misleading statements of fact concerning the price of its tickets and ticket selling services by quoting consumers a fee-less price for tickets in Figures 3 through 8 and 12 through 14 of this Complaint, and hiding a full breakdown of its fees in a right-side bar on its website or behind a "View details" icon on its mobile application.  Third, SeatGeek fraudulently altered its written charges by quoting consumers fee-less ticket prices in Figures 3 through 8 and 12 and 13 of this Complaint, only to sneak in its fees later during the purchase process, as depicted in Figures 9-11 and 14-15 of this Complaint.

53.     Plaintiff and Class members were harmed by paying SeatGeek's exorbitant fees.

54.     Plaintiff and Class members relied on SeatGeek's false and misleading representations that the cost of the tickets did not include fees in choosing to purchase their tickets.

55.     SeatGeek's aforementioned deceptive trade practices tricked Plaintiff and Class members into paying SeatGeek's exorbitant fees.  But for SeatGeek's deceptive trade practices, Plaintiff and class members would not have either bought tickets from SeatGeek, or would have been willing to pay substantially less for them.  Had SeatGeek transparently disclosed *it charges over 30% in service fees,* Plaintiff and Class members likely would have purchased tickets to the exact same event from another website, like TickPick or MegaSeats, which do not charge any service fees. *See, e.g.*, https://www.tickpick.com/; https://www.megaseats.com/.

56.     As a direct and proximate result of Defendant's violations of the NDTPA, Plaintiff and Class members are victims of "consumer fraud" under Nev. Rev. Stat. Ann. § 41.600(2)(e), and have suffered damages. Plaintiff and Class members thus seek all relief available under Nev. Rev. Stat. Ann. § 41.600, including all damages sustained as a result of Defendant's violations of the NDTPA, and an award of reasonable attorneys' fees and costs of suit.

57.     On behalf of themselves and members of the Nationwide Class and Nevada Subclass, Plaintiff seeks to recover his actual damages, punitive damages, restitution, and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the Nationwide Class and Nevada Subclass, prays for judgment as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(d)    For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief; and

(g)    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

1

## JURY TRIAL DEMANDED

2

Plaintiff demands a trial by jury on all claims so triable.

3

4

Dated: November 7, 2024

5

By:    /s/Michael Gayan

6

7

**KEMP JONES, LLP**
Michael Gayan, Esq. (Nev. Bar #11135)
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
m.gayan@kempjones.com

8

9

10

**BURSOR & FISHER, P.A**.
Philip L. Fraietta (*pro hac vice app. forthcoming*)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

11

12

13

14

Stefan Bogdanovich (*pro hac vice app. forthcoming*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: sbogdanovich@bursor.com

15

16

17

*Attorneys for Plaintiff*

18

19

20

21

22

23

24

25

26

27

28