UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARC CARBONELL, | Case No.2:24-CV-2087  JCM (NJK) |
| Plaintiff(s), | |
| v. | ORDER |
| SEATGEEK, INC., | |
| Defendant(s). | |

Presently before the court is defendant SeatGeek, Inc.'s motion to compel arbitration, transfer venue or, alternatively, to dismiss the action.  (ECF No. 19).  Plaintiff Mars Carbonell, individually and on behalf of all others similarly situated,[1] filed a response (ECF No. 25), to which defendant replied.  (ECF No. 26).

Also before the court is plaintiff's motion to strike or leave to file sur-reply.  (ECF No. 34). Defendant filed a reply (ECF No. 35).

The court has sufficient information to decide the instant motions based on the filings and thus denies any request for oral argument.  LR 78-1.

I.    **BACKGROUND**

Plaintiff purchased tickets to a Maluma concert at the MGM Grand Garden Arena on September 13, 2023, in Las Vegas, Nevada using defendant's website.  (ECF No. 1 at ¶ 32). Defendant charges fees for its services, which are not initially advertised to the purchaser.  (*Id.* at

---

[1] The court has not yet certified a class.

¶ 1).  Rather, the fee appears during the checkout process as part of the total cost and is disclosed as a line item on the website or in a drop down on the mobile app.  (*Id.* at 12–14).

Plaintiff filed a class action lawsuit against defendant alleging violations of the Ticket Reseller provision of the Nevada Revised Statutes, § 598.397 *et seq.*, and deceptive trade practices in violation of § 598.0915.  (ECF No. 1 at ¶¶ 3–4).  Plaintiff claims defendant violated these provisions by failing to fully disclose its fees when reselling tickets to entertainment events in Nevada.  (*Id.* at ¶ 3)

Defendant moved this court to compel arbitration or transfer venue, arguing that this dispute is subject to the arbitration, venue, and class action waiver clauses found in its July 2023 and September 2023 terms of use.  (*Id.* at 1–2).  Defendant claims that plaintiff accepted the terms of use multiple times, thereby waiving his right to a class action and agreeing to settle disputes in arbitration pursuant to the terms.  (*See id.* at 1).  Plaintiff disputes agreeing to either of the terms of use.  (*See* ECF No. 25).

Defendant also requests this court to dismiss this case under the theories that plaintiff lacks Article III standing and that the voluntary payment doctrine bars plaintiff's claims.  (ECF No. 19 at 2).

## II.    MOTION TO COMPEL OR TRANSFER VENUE

### A.  Legal Standard

The Federal Arbitration Act (FAA) provides for the enforcement of arbitration agreements in any contract involving interstate commerce.  9 U.S.C. §§ 1–2; *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  *Id.* § 2 (emphasis added).  The Act further dictates that a party to an arbitration

agreement may invoke his or her rights under the Act by petitioning the district court "for an order directing that such arbitration proceed in the manner provided for" in the agreement. *Id.* § 4.

When addressing a motion to compel arbitration, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999)). The party "seeking to compel arbitration has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).[2] In making this determination, "district courts rely on the summary judgment standard" of Federal Rule of Civil Procedure (FRCP) 56. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021).

While federal law governs the determination of scope, state law governs the determination of an agreement's validity. *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014). Accordingly, state law governs contractual defenses raised to invalidate an agreement to arbitrate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 988 (9th Cir. 2007); *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002).

**B.    Discussion**

1.    <u>Choice-of-law</u>

Defendant claims that New York state law applies to the formation of the terms of use as

---

[2] Defendant cites to *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), to support the proposition that the "party resisting arbitration bears the burden" of proof. However, in that case the existence of the arbitration agreement was not in dispute. The plaintiff was attempting to resist arbitrating a specific claim.

1    between the parties because the terms of use contain a forum selection clause.  (ECF No. 16, Ex.

2    B § 15.6; *see also* Ex. A § 15.6).  However, assuming that the terms of use are valid, and applying

3    the forum selection clause, "puts the cart before the horse."  (ECF No. 25 at 4 n. 2).

4

5            A federal court sitting in diversity applies the choice of law rules of the forum state to

6    determine the validity of an arbitration agreement.  *See, e.g.*, *Patton v. Cox*, 276 F.3d 493, 495 (9th

7    Cir. 2002).  Nevada looks to the Restatement (Second) of Conflicts of laws "in determining choice-

8    of-law questions involving contracts."  *Progressive Gulf Ins. Co. v. Faehnrich*, 130 Nev. 167, 171

9    (1979).  "The validity of an arbitration agreement, and the rights created thereby, are determined

10   by the law selected by application of the rules of §§ 187–188."  Restatement (Second) of Conflict

11   of Laws, § 218 (1988).  Section 187 is inapplicable because it assumes that the parties have entered

12   into an agreement.[3]

13

14           Under § 188, the court applies the local law of the state that has the most significant

15   relationship to the transaction.  The plaintiff is a resident of Nevada, wherein he signed up for a

16   SeatGeek account and purchased tickets.  (ECF No. 1).  The event was also in Nevada.  (ECF No.

17   1).  The only interest that New York has in this case is that SeatGeek's principal place of business

18   is in New York.  (ECF No. 1 at ¶ 10).  Accordingly, Nevada state contract law applies to determine

19   whether there was a valid agreement between the parties.  *See Chiron Corp.*, 207 F.3d at 1130;

20   Rest. § 188(3).

21

22                   2.       Mutual Assent (inquiry notice theory)

23

24           Nevada courts apply the principles of contract law to the formation of online contracts.

25

26   _____

27           [3] Section 187 states that the "law of the state chosen by the parties to govern their
     contractual rights and duties will be applied if the particular issue is one which the parties could
28   have resolved by an explicit provision in their agreement directed to that issue."  Restatement
     (Second) of Conflict of Laws, § 187(1).

*See, e.g.*, *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1062–63 (D. Nev. 2012).  However, Nevada state law on online terms of use is underdeveloped.  Ninth Circuit decisions applying California case law are instructive on the matter.

"To avoid the unfairness of enforcing contractual terms that consumers never intended to accept, courts confronted with online agreements. . .have devised rules to determine whether meaningful assent has been given."  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).  Accordingly,

> "Unless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."

*Id.* (citing *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1173 (9th Cir. 2014)).

The test for reasonably conspicuous notice requires courts to consider the visual design of the webpages and the context of the transaction together.  *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1155 (9th Cir. 2025).  There is no bright line rule for what design elements are adequate or inadequate; it is a context-based inquiry.  *Kseniya Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (citing *Chabolla*, 129 F.4th at 1156–57).

As to the second prong, the Ninth Circuit has held that "unambiguous manifestation of assent can occur only in the inquiry-notice context where an internet user is '*explicitly* advised that the act of clicking will constitute assent to the terms and conditions of an agreement.'"  *Id.* at 710 (internal citations omitted).

The onus is "on website owners to put users on notice of the terms to which they wish to bind consumers."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014); *accord*

1    *Berman*, 30 F.4th at 866 (Baker, J., concurring).

2                        i.      *The sign-in pop-up*

3          Defendant claims that plaintiff accepted the July 2023 terms of use hyperlinked in its sign-

4    up pop-up window.  But "[courts] doubt[] whether most consumers know that clicking that [sign-

5    up] button constitutes agreeing to contract terms."  *Berman*, 30 F.4th at 866.  Consumers are less

6    likely to be on the lookout for contractual terms when they would not expect to be entering an

7    ongoing contractual relationship.  *Id.* at 867.  Although sign-in wrap provides a textual notice that

8    there are terms and conditions, it does not require a user to click an additional "I agree" button to

9    accept the terms and conditions or scroll through them.  *Id.* at 866.

10   . . .

11   . . .

12   . . .

13   . . .

14   . . .

15   . . .

16   . . .

17   . . .

18   . . .

19   . . .

20   . . .

21   . . .

22   . . .

23   . . .

When a user signs up for a SeatGeek account, there is a line of text above the sign-in button that reads: "By clicking the 'Sign up' button below, you are agreeing to our <u>Terms of Use</u>, opening an account with SeatGeek, and acknowledging you have read our <u>Privacy Notice</u>."



(ECF No. 25 at 5).

The line of text is the most unremarkable item on the sign-in pop-up. It is in small, grey font, and located just above a larger, prominent black "Sign Up" button, thereby de-emphasizing its importance. *See Berman*, 30 F.4th at 856 (concluding that the tiny grey font was "the antithesis of conspicuous"); *In re Stubhub Refund Litig.*, 2023 WL 5092759, 2023 U.S. App. LEXIS 20687, at *6 (9th Cir. 2023) (noting that the gray text "does not stand out against the white background").

The text is worse than in *Berman* because it does not alert the user to any critical terms that the user would be agreeing to. *Compare Berman*, 30 F.4th at 857 (text explicitly stated that "Terms & Condition" included "mandatory arbitration"), *with Lopez v. Dave, Inc.*, 2022 WL 1708924,

1    2022 U.S. Dist. LEXIS 210598, at *3 (N.D. Cal. Nov. 21, 2022), *aff'd*, 2023 WL 8594393, 2023

2    U.S. App. LEXIS 32736 (9th Cir. Dec. 12, 2023) (differentiating sign-up from *Berman* because it

3    did not include text about "mandatory arbitration").  Rather, the text immediately after "terms of

4    use," alerts the user simply that it is agreeing to "open an account."

5

6            Defendant surely could have done more to emphasize the existence of an agreement—

7    bolding the hyperlink or making it larger or a different color.  *Cf. Oberstein v. Live Nation Ent.,*

8    *Inc.*, 60 F.4th 505, 516 (9th Cir. 2023) ("…crucially, the "Terms of Use" hyperlink is

9    conspicuously distinguished from the surrounding text in bright blue font, making its presence

10   readily apparent.").  Although defendant underlines "Terms of Use," underscoring words or

11   phrases is insufficient to provide notice to reasonably prudent users that there is a clickable link.

12   *See, e.g.*, *Berman*, 30 F.4th at 856; *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th

13   Cir. 2024); *Lopez*, 2023 U.S. App. LEXIS 32736, at *3.  Defendant merely underlines "Terms of

14   Use" in the same grey as the rest of the line of text.  Furthermore, "Privacy Notice" receives the

15   same underlining treatment.

16

17           Defendant failed "to clearly denote the hyperlink" and therefore did not provide reasonably

18   conspicuous notice of the July 2023 terms located in the SeatGeek sign up pop-up.  *See Berman*,

19   30 F.4th at 857.

20

21                          *ii.*      *The check-out page*

22

23           Defendant also claims that plaintiff accepted the July 2023 terms of use before purchasing

24   a ticket on defendant's website.  (*See* ECF No. 19 at 5).  This argument is unavailing.

25           The checkout page is subdivided into two parts: on the right side of the page, the customer

26   reviews ticket information and pricing; on the left side of the page, the customer clicks "Place

27   Order" to complete the process.

28



**Figure 9**

(ECF No. 1 at 11) (example of checkout page for a different event in Nevada).[4]

Defendant again fails to use a different color to underline the hyperlink or otherwise emphasize it. *See supra* at 7. Instead, the defendant buries the link within three lines of small grey text that is barely visible in the context of the page. *See supra* at 7. The text containing the hyperlink is the lightest and smallest on the checkout page. Additionally, the placement of the text directly above the brilliant green "place order" button draws the user's attention away. *See Lopez*, 2023 U.S. App. LEXIS 32736, at *3 (finding issue with tiny gray font was exacerbated because "comparatively larger font" of the green "Join" button "draw[s] the user away from the barely

---

[4] For the purposes of this motion, the court assumes that plaintiff's checkout page looked substantially similar to Figure 9.

1   readable critical text."); *see also Serrano v. Open Road Delivery Holdings, Inc.*, 666 F. Supp. 3d

2   1089, 1096 (C.D. Cal. 2023).

3       Context is relevant.  When users reach this page, they have already selected their tickets,

4   entered their contact information, and input their billing information.  All that is left to do on the

5   checkout page is click "place order."  Though the page contains ticket information, at this point,

6   the user has seen it at least twice (during seat selection and billing).  The checkout page presents a

7   similar issue to the sign-up window because a customer needs only to click "place order," and not

8   some additional button such as "I agree" to the terms.  *See Berman*, 30 F.4th at 866 (Baker, J.,

9   concurring).

10       A reasonable user would not expect contractual terms at this stage.  *See id.*  The onus was

11   on defendant to alert the plaintiff of the terms' sudden appearance, but it failed to provide

12   reasonably conspicuous notice of the hyperlink to the July 2023 terms on its checkout page.

15              *iii.    The email notification*

16

17       Finally, defendant alleges that plaintiff accepted the updated September 2023 terms of use

18   by opening the email notification of the new terms and later logging onto his SeatGeek account at

19   least one time.  (ECF No. 19 at 6).  The argument is premised on the following language found

20   within the July 2023 terms of use:

21

22       PLEASE NOTE THAT THE TERMS ARE SUBJECT TO CHANGE BY
        SEATGEEK IN ITS SOLE DISCRETION AT ANY TIME. If you do not agree to
23       any change(s) after receiving a notice of such change(s), you shall stop using the
        Digital Properties and/or the Services. Otherwise, your continued use of the Digital
24       Properties and/or Services constitutes your acceptance of such change(s). . .

25   (*Id.*)

26       However, this clause cannot be enforced against him because plaintiff did not have

27   reasonably conspicuous notice of the July terms of use.  Assuming defendant even sent an email

28   notification, and plaintiff opened it, plaintiff did not agree that his continued use of the properties

constituted his acceptance of the September terms.

Plaintiff did not agree to either of the terms of use and therefore cannot be compelled to abide by the clauses contained within the terms. Accordingly, the court denies defendant's motion to compel arbitration or transfer venue to a state or federal court in New York.

### III.    MOTION TO DISMISS

Defendant moves to dismiss all of plaintiff's claims under FRCP 12(b)(1) and 12(b)(6), arguing that he lacks Article III standing and failed to state a claim. The court grants defendant's 12(b)(1) motion to dismiss and grants its 12(b)(6) motion to dismiss in part.

#### A.  12(b)(1)

FRCP 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008).

Defendant claims that plaintiff failed to allege a "concrete injury" required to establish Article III standing. (ECF No. 19 at 19); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). However, a "pocketbook" injury has long been "recognized as providing a basis for a lawsuit in American courts." *Id.* at 432; *see Jama v. State Farm Mut. Auto. Ins. Co.*, 113 F.4th 924, 937 (9th Cir. 2024).

Plaintiff alleges that his pocketbook was harmed by paying an "unlawfully applied fee" because under Nevada law "a secondary ticket exchange…shall not resell a ticket… without first disclosing to purchaser the total amount that the purchaser will be charged for the ticket, including any fees." Nev. Rev. Stat. § 598.39795. The law is silent as to the meaning of "first disclos[ure]."

However, "resale" or "resell" is defined as "an offer or completed transaction for the sale of a ticket. . ." § 598.3975. Thus, a secondary ticket exchange *shall not* offer or complete a transaction without first disclosing the total ticket price, inclusive of fees. The "shall" dictates that secondary ticket exchange cannot do either of these things. Accordingly, a secondary ticket exchange must disclose the total ticket price, inclusive of fees, when it offers the ticket.

According to plaintiff, defendant failed to "first disclose" because defendant's fee did not appear until the checkout page. (*See* ECF No. 1). Plaintiff has Article III standing to bring a claim under Nevada Revised Statute § 598.39795 and, therefore, defendant's 12(b)(1) motion to dismiss is denied. *See Jama v. State Farm Mut. Auto. Ins. Co.*, 113 F.4th 924, 937 (9th Cir. 2024).

**B. 12(b)(6)**

1. <u>Voluntary Payment Doctrine</u>

To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The court must accept as true all of the allegations contained in a complaint. *Id.* at 678–79 (emphasis added). However, the allegations "may not simply recite the elements of a cause of action." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In line with other Nevada federal courts, this court declines to apply the voluntary payment doctrine to this motion. *See Bissonette v. Enter. Leasing Company-West, LLC*, 30 F. Supp. 3d 1002, 1024 (D. Nev. 2014) (holding that defendant may not rely on voluntary payment doctrine as defense to plaintiffs' consumer protection claims); *accord Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218, 1222 (D Nev. 2010), *rev'd in part on other grounds*, 674 F. App'x 663 (9th Cir. 2017).

The voluntary payment doctrine is an affirmative defense; such defenses are generally not considered on a motion to dismiss unless they rely on undisputed facts, as doing otherwise would require the court to weigh the credibility of the plaintiff's allegations.  *See Wilmington Tr., N.A. as Tr. of ARLP Securitization Tr., Series 2014-2 v. Saticoy Bay LLC Series 206 Valerian*, 416 F. Supp. 3d 1077, 1087 (D. Nev. 2019), *aff'd sub nom. Wilmington Tr., Nat'l Ass'n v. Saticoy Bay LLC Series 206 Valerian*, 831 F. App'x 316 (9th Cir. 2020) (citations omitted).  Applying the doctrine would inappropriately rely on a disputed fact: whether plaintiff was aware upon checkout that he was charged unlawful fees.

"For the voluntary payment doctrine to be effective, plaintiffs must have been fully informed."  *Presidio Adventures Dev. I v. Countrywide Fin. Corp.*, 2015 WL 4475348, 2015 U.S. Dist. LEXIS 94866, at *11 (D. Nev. July 21, 2015).  Conversely, the doctrine does not apply when "plaintiff's claim is predicated on a lack of full disclosure by defendant," which is the case here. *See, e.g.*, *Charles v. Color Factory, LLC*, 2024 WL 1693236, 2024 U.S. Dist. LEXIS 71926, at *9 (S.D.N.Y. Apr. 19, 2024).  Plaintiff claims that "[a]t the time he purchased his tickets, he *does not recall* even being aware fees were charged" and "he was not aware that [d]efendant's conduct was unlawful.  He was not browsing websites in search of legal violations."  (ECF No. 1 at ¶¶ 33, 55; ECF No. 25 at 23) (emphasis added).  Accepting plaintiff's allegations as true, the court declines to dismiss the action based on defendant's voluntary payment doctrine theory.

2.    Equitable Relief

The court dismisses plaintiff's claims for "restitution and all other forms of equitable monetary relief[.]"  (ECF No. 1).  The Nevada Deceptive Trade Practices Act provides the forms of relief that the court may award a prevailing party; restitution and equitable monetary relief are not among them.  § 598.3982.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to compel arbitration or transfer venue (ECF No. 17) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion to dismiss (ECF No. 19) be, and the same hereby is, GRANTED in part and DENIED in part.  Defendant's 12(b)(1) motion to dismiss is DENIED.  Defendant's 12(b)(6) motion to dismiss is GRANTED as to plaintiff's claim for equitable relief ONLY.

IT IS FURTHER ORDERED that plaintiff's motion to strike (ECF No. 34) be, and the same hereby is, DENIED.

DATED September 15, 2025.

_____
UNITED STATES DISTRICT JUDGE